UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| E.M.C., a minor, by his mother, TAMIKA D. CHAVAC, (Social Security No. XXX-XX-0560), | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:08-cv-612-WGH-LJM |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM  DECISION AND ORDER**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon the consents of the parties (Docket Nos. 13, 19) and an Order of Reference dated August 26, 2008 (Docket No. 20).  The parties filed their briefs at Docket Nos. 18, 22, and 23, and the Magistrate Judge heard oral argument on January 21, 2009, at which the Plaintiff was represented by counsel, Patrick Harold Mulvany, in person, and the Defendant was represented by counsel, Janet Gumm, by telephone.

**I. Statement of the Case**

Plaintiff, E.M.C., a minor, seeks judicial review of the final decision of the agency, which found him not disabled and, therefore, not entitled to Supplemental Security Income ("SSI") benefits under the Social Security Act

("the Act"). 42 U.S.C. § 1381(a); 20 C.F.R. § 404.1520(f). The court has jurisdiction over this action pursuant to 42 U.S.C. § 1383(c)(3).

Plaintiff applied for benefits on February 9, 2005, alleging disability since September 2003. (R. 68-71). The agency denied Plaintiff's application both initially and on reconsideration. (R. 47-49, 53-57). Plaintiff appeared along with his mother and grandmother, who testified at a hearing before an Administrative Law Judge ("ALJ") on October 15, 2007. (R. 247-77). Plaintiff was represented by an attorney. (R. 247). On November 5, 2007, the ALJ issued an opinion finding that Plaintiff was not disabled. (R. 13-27). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 5-8). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on May 12, 2008, seeking judicial review of the ALJ's decision.

## II.  Medical Evidence

On November 1, 2003, Plaintiff was admitted to the emergency room at St. Vincent Hospital. (R. 177-78). Plaintiff's chief complaint was a two-day long episode of cough and fever. Plaintiff's past medical history was significant for asthma; according to his mother, he had received some breathing treatments when he was approximately six months old, but he had not required any treatments since then. (R. 177). Plaintiff was treated with Albuterol twice for 30 minutes and was given Prelone, which he tolerated well. With each breathing treatment, Plaintiff improved air exchange and was wheeze-free after the second

treatment; however, loud rhonchi was still present. Plaintiff was discharged home with a prescription for an Albuterol inhaler as well as Prelone. (R. 178).

On November 4, 2003, Plaintiff presented at the St. Vincent Primary Care Center. (R. 149). His complaints included two days of fever of 102 degrees and shortness of breath. The assessment was an asthma exacerbation. (R. 149).

On October 4, 2004, Plaintiff was seen again at the St. Vincent Primary Care Center. (R. 150). His primary concern was several weeks of asthma that was triggered by weather change. He was using Albuterol, wheezing at night, and coughing. His mother also complained of problems with developmental milestones; his speech was less than 50 percent intelligible. The plan was for a speech referral and a return to the asthma clinic in three weeks. He was prescribed Pulmicort[1] and Albuterol. (R. 150).

On January 26, 2005, Plaintiff was seen at the St. Vincent Primary Care Center. (R. 159-60). Plaintiff's concerns were a recent asthma attack and a rash. Plaintiff's breathing symptoms were worse in cold and during exercise. He displayed both nighttime and daytime symptoms three times a week. Plaintiff used Albuterol three days a month, three times a day. Plaintiff's assessment was that he had moderate, persistent asthma that was controlled. (R. 159).

On January 27, 2005, Plaintiff was seen at the St. Vincent Primary Care Center for speech evaluation and treatment for a speech delay. (R. 161).

---

[1] "Pulmicort" is an anti-inflammatory steroid medication.

On February 5, 2005, Plaintiff's mother called the St. Vincent Primary Care Center indicating that Plaintiff had a history of asthma, bad cough, and a fever of 102 degrees; Plaintiff's mother was instructed to bring him to the emergency room. (R. 162). At the emergency room, Plaintiff complained of cough, slight dyspnea, fever, and trouble sleeping. (R. 135-37). He also complained of sore throat; he was, however, in no distress and was quietly watching TV. (R. 136). Plaintiff was wheezing. He was using Albuterol and Pulmicort, but the records indicated that his mom was out of Albuterol and/or unable to find it. (R. 135). Plaintiff was diagnosed with acute sinusitis and prescribed Amoxicillin, Albuterol, and Flonase[2] nasal spray. (R. 137).

On April 21, 2005, Plaintiff was evaluated by Sandeep Gupta, M.D., for a Social Security medical evaluation. (R. 105-107). At the time, Plaintiff was a three-year, eight-month-old accompanied to the clinic by his mother, who alleged disability due to asthma and speech problems. He was diagnosed with asthma when he was about four months old and continued to have attacks about once a week. It was alleged that these attacks are precipitated by changes in weather and inter current illnesses. They interfere with his activities. He takes Pulmicort daily. Plaintiff's mother alleged that his speech is delayed; she can understand about 50 percent of what he says while a stranger can understand about 20 percent of what he says. Dr. Gupta opined that Plaintiff has a longstanding history of asthma and takes medication on a regular basis,

---

[2]"Flonase" is a steroid medication.

but that there was no evidence of active disease or respiratory distress. Also, Dr. Gupta explained that Plaintiff was in speech therapy for his speech problems. (R. 107).

On April 27, 2005, Plaintiff presented to Gretchen Hadar, M. Ed., for a speech-language evaluation. (R. 115-18). The evaluation revealed that Plaintiff's articulation, receptive language, and expressive language skills were all within average limits, and his voice and fluency and hearing were within functional limits. Plaintiff displayed communication skills that were in the average range. (R. 116).

On August 9, 2005, Plaintiff was seen at the St. Vincent Primary Care Center. (R. 164). He was using Pulmicort daily, using his nebulizer as needed, and had a referral for speech therapy. Plaintiff was not displaying signs of developmental delay except that he was not engaging in pretend play and was not fully intelligible to strangers. (R. 164). Plaintiff's assessment was that his reactive airway disease ("RAD") was stable.

On May 4, 2006, it was noted on a Family Development Services Head Start Standard Medical Health Testing Results form that Plaintiff's asthma was well controlled on Pulmicort. (R. 182).

On May 4, 2006, Plaintiff presented at the St. Vincent Primary Care Center for a well-child exam. (R. 165). He was using Pulmicort daily and Albuterol as needed, but had not used Albuterol in at least two months. It was noted that he wets the bed at night, and he was prescribed a bed alarm.

On May 10, 2006, Plaintiff was seen at the St Vincent Primary Care Center. (R. 166-67). His concerns were a runny nose, and some wheezing with nighttime and daytime symptoms. He displayed coughing, wheezing, and shortness of breath with exercise. He had not used Albuterol in two months, and it was noted that his mother could not fill the prescription for Pulmicort. Plaintiff's assessment was mild, persistent RAD, and it was noted that he needed to change from a nebulizer to an MDI due to an insurance requirement. The plan was to use Flovent[3] and Albuterol. (R. 166).

On June 14, 2006, Plaintiff had another visit to the St. Vincent Primary Care Center. (R. 172). His chief complaints included: (1) a cough with night time symptoms for the last week; (2) waking up with a cough; and (3) daytime symptoms for the last week which involved Plaintiff's face turning red and then beginning to cough. Plaintiff had not used Albuterol since the previous week, and he had been using Flovent. The assessment was mild, persistent RAD and pharyngitis, and the plan was to continue Flovent; Plaintiff was given a refill. (R. 172).

On February 11, 2007, Plaintiff's mother telephoned the St. Vincent Primary Care Center. (R. 174). She reported that Plaintiff had had difficulty breathing for two days, was coughing, and he had last used Albuterol "a few weeks" ago, but he had received Pulmicort that day. It was opined that he had an exacerbation of his RAD, and Plaintiff's mother was instructed to go to the

---

[3]"Flovent" is a steroid asthma medication.

emergency department. On February 12, 2007, Plaintiff presented at the St. Vincent Primary Care Center. (R. 175). His chief complaint was a cough of three weeks, sore throat, back pain, and loss of appetite. Plaintiff had difficulty breathing, a cough, and wheezing. The assessment was asthma, and the plan was to restart Flovent and continue Albuterol as needed. (R. 175).

On April 16, 2007, Plaintiff presented to the Community Hospital emergency room. (R. 187, 190). He had "a history of asthma [and] presents today with a 3-day history of cough and low-grade fevers at home." He was using Flovent and Albuterol. He was given a single Albuterol/Atrovent nebulization and 40 mg of Orapred. He was diagnosed with pneumonia and asthma exacerbation.

On September 7, 2007, Plaintiff presented to the Community Hospital emergency room. (R. 195-96). His complaint was shortness of breath, and he had been coughing for the past week. He had run out of his nebulizer treatment. He had been using his Albuterol more often than normal as well. That day at school he had a vomiting episode. However, it was posttussive. Plaintiff was diagnosed with exudative pharyngitis and asthma.

It was noted in a September 7, 2007 report from the Andrew J. Brown Academy (R. 201) that Plaintiff goes to the nurse's office every day between 11:45 a.m., and 12:00 p.m., for about ten minutes to receive his breathing treatment.

### III.  Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997).  This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility.  *Richardson,* 402 U.S. at 399-400.  Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner.  *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits.  *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

### IV.  Standard for Disability of a Child

In order to qualify for benefits under the Act, a child under the age of 18 must establish that he suffers from a "disability" as defined by the Act.  For children, "disability" is defined as a "medically determinable physical or mental impairment, which results in marked and severe functional limitations."  42 U.S.C. § 1382c(a)(3).  The Social Security regulations set out a sequential three step test that the ALJ is to perform in order to determine whether a child is disabled.  *See* 20 C.F.R. § 416.924.  The ALJ must consider whether the

claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; and (3) has an impairment that meets, medically equals, or functionally equals the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* An impairment will be found to have limitations that "functionally equal the listings" if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain as explained in 20 C.F.R. § 416.926a.

## V. Issues

Plaintiff has essentially raised five issues. The issues are as follows:

1. Whether Plaintiff was denied due process.

2. Whether the ALJ committed error by failing to refer to the relevant listings.

3. Whether the ALJ improperly failed to consult a medical expert.

4. Whether the ALJ improperly rejected the opinions of treating physicians.

5. Whether the ALJ's credibility determination was patently wrong.

In this case, the court determines that issue 2 is determinative of the outcome of this case and will address that issue only.

**Issue 2: Whether the ALJ committed error by failing to refer to the relevant listings.**

Plaintiff alleges that the ALJ erred by failing to conclude that Plaintiff met or medically equaled three of the listings from 20 C.F.R. Part 404, Subpart P,

Appendix 1, specifically Listing 103.03C for asthma or either Listing 112.02 or 112.10 for Plaintiff's developmental disorder.

### A. Listing 103.03

In order for a child to meet Listing 103.03, he must satisfy the following criteria:

Asthma. With:

A. $FEV_1$ equal to or less than the value specified in table I of 103.02A;

Or

B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks;

Or

C. Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:

1. Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or

2. Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period;

Or

      D.  Growth impairment as described under the criteria in
         100.00.

20 C.F.R. Part 404, Subpart P, Appendix 1.

      Plaintiff has made no argument that his condition meets subparagraphs A, B, or D of Listing 103.03, and because there is no objective medical evidence to support such a finding, the ALJ's decision is affirmed as to the subparagraphs.

      In order to meet subparagraph C of Listing 103.03, Plaintiff must first demonstrate one of the following: "Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators."  The ALJ concluded that Plaintiff did not meet either portion of this listing and did not proceed to the second portion of subparagraph C.  (R. 20).  In order to meet the second portion of subparagraph C, Plaintiff must also demonstrate: "Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period."  It appears that Plaintiff does use "corticosteroids" at the required levels.  Therefore, the primary focus is on whether Plaintiff had "persistent" low-grade wheezing or a lack of extended symptom-free periods.  The ALJ's opinion concludes that E.M.C.'s condition did not demonstrate "persistent" low-grade wheezing between acute attacks or absence of extended symptom-free periods.  (R. 20).  The only evidence cited to by the ALJ is this:

      According to Ms. Chavac, the claimant's asthma is somewhat
         controlled (Exhibit B at 28).

(R. 20).

-11-

The court has reviewed the document expressly relied on by the ALJ (R. 170-71), and in this case the plaintiff's mother did check the box "somewhat controlled" in response to the question, "How well do you feel your child's asthma is controlled?"  Her other options were "very well controlled" or "not well controlled."  However, that same document advises that the child had been hospitalized for urgent breathing problems one or two times in the last month, wheezed after exercise or activity, wheezed with colds and viral illnesses, woke up at night from coughing three or four nights in a week, and has limited activity due to breathing.  The fact that the mother concluded that the asthma is somewhat under control does not speak directly to whether there is "persistent" low-grade wheezing between acute attacks or the absence of extended symptom-free periods.  A fair reading of the record at pages 170 through 171 also indicates problems three or four nights a week, and wheezing with activity and any cold or viral illness.

The ALJ does not cite to any other piece of evidence in the record in support of the issue of whether plaintiff's condition is "persistent."  Weighed against this single piece of evidence is the evidence previously recited above.  Interestingly, the medical note of the Plaintiff's January 26, 2005 visit to St. Vincent Primary Care Center describes E.M.C.'s condition as "mod. *persistent* asthma – <u>controlled</u>."  (R. 159)(first emphasis added).  His visit on May 10, 2006, describes his condition as "mild *persist.* RAD" (emphasis added) and indicated medication is necessary on a regular basis.  (R. 166).  The medical record of the June 14, 2006 visit to St. Vincent Primary Care Center describes the Plaintiff's

condition as "mild *persistant* [sic] RAD." (R. 172)(emphasis added). E.M.C.'s visit to the emergency room on April 16, 2007, found an examination of his chest "[r]eveals good air movement with occasional expiratory wheeze cleared with coughing, otherwise, clear." (R. 188).

The question left before the ALJ then is whether the Plaintiff's condition is "persistent." The authority cited to the court by the Plaintiff which would appear to apply is found in *Honeysucker v. Bowen,* 649 F.Supp. 1155 (N.D. Ill. 1986), which states:

> The ALJ's determination that plaintiff's high blood pressure is not persistent within the meaning of the regulations is erroneous. The term "persistent" is not defined in § 10.10. However, in the ordinary common understanding of the word in English something need not be present every single minute to be persistent. If such a meaning were intended, the word "constant" could have been used to more clearly express such an intent.
>
> We think "persistent" refers to an impairment which stubbornly recurs despite efforts to treat or control it.

*Id.* at 1158.

The court concludes that in weighing the articulated piece of evidence cited by the ALJ against all of the other evidence of record, there is not substantial evidence to support the ALJ's conclusion that E.M.C. does not demonstrate "persistent" low-grade wheezing between acute attacks. However, this court notes that in the record where the word "persistent" is used (R. 159, 166-67, 172), E.M.C.'s condition is often referred to as moderate or mild. Given

the limited scope of this court's review of administrative law decisions, this court concludes that it is better left to the expertise of the Commissioner to determine whether E.M.C.'s condition meets the listing because, although "persistent," it is of a mild or moderate level.

### B. Listings 112.02 and 112.10

Because of the need to remand, this court need not deal in detail with the allegation that the ALJ improperly failed to consider Listings 112.02 and 112.10 which deal with mental disorders for children under 18 years of age. However, we note that of the two listings suggested by Plaintiff's counsel, Listing 112.02 pertains to organic mental disorders, and Listing 112.10 pertains to autistic disorders and other pervasive developmental disorders. The regulations require that there be medical documentation of some organic disorder or autistic disorder. This court has found no medical documentation in the record, and the ALJ's failure to consider those listings in the absence of such medical documentation is not error. Likewise, the reference to an adult listing is not to be considered as error in this case as it appears that this adult listing was the most closely analogous listing to the speech disorder that is documented in the medical record. The court would not conclude that there is error in that aspect of the claim.

### VI. Conclusion

The ALJ in this case conducted a thorough examination of the record and issued a thoughtful opinion. It is well-founded in all respects save the issue of

whether the Plaintiff's condition meets Listing 103.03C.  Therefore, this case is

**REMANDED** to the Commissioner for further consideration of that issue.

    **SO ORDERED.**


**Dated:**  February 12, 2009

                                                   WILLIAM G. HUSSMANN, JR.
                                                       Magistrate Judge


**Electronic copies to:**

Patrick Harold Mulvany
mulvany@onet.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov